# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 5:02-CR-50088** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **JAMES C. CURRY (1)** | **MAGISTRATE JUDGE HORNSBY** |

## RULING

Before the Court is a Motion for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act, filed by Defendant James C. Curry. [Doc. No. 213] The government opposes the motion, arguing Curry is ineligible for relief. [Doc. No. 214]. Alternatively, the government argues the Court should "exercise its discretion and deny relief based on the sentencing factors provided in 18 U.S.C. § 3553(a)." *Id.* at 1. For the reasons set forth below, the Court finds Defendant is eligible for relief under the First Step Act. The Court further finds a sentence reduction is appropriate and will reduce Defendant's sentence to time served, effective March 10, 2020.

## I.
### BACKGROUND

In 1997, local law enforcement obtained the assistance of federal law enforcement agencies for an investigation into the drug trafficking activities of Derek DeCarlo Parker and Vincent E. Tate.[1] In November of 1999, law enforcement interviewed a confidential informant ("CI"), who advised he and Defendant, James Calvin Curry, had been purchasing cocaine base ("crack") from Parker and Tate for the previous two months. With assistance from the CI, "plans were formulated

---

[1] The facts set forth in this portion of the Court's Ruling are found in Curry's Presentence Investigation Report.

to utilize an undercover agent with the aid of the unwitting defendant, James Calvin Curry, to purchase crack cocaine from Derek Parker or Parker's co-conspirators."[2] Beginning in December of 1999 and continuing for approximately one year, the undercover agent would drive Curry to either Parker or Tate's residence, whereupon Curry would enter the residence, return to the vehicle, and deliver the narcotics to the undercover officer. Over the course of that year, Curry made seven individual crack cocaine purchases for the undercover officer in amounts ranging from 20.75 grams to 51.5 grams. In the PSR, Curry was additionally held accountable for making arrangements on one occasion for the undercover agent to make a direct purchase of 101.8 grams of cocaine base from Parker. The PSR estimated Curry was responsible for 1,472.2 grams of cocaine base during the existence of the conspiracy, resulting in a total amount of 1.812 kilograms of cocaine base attributable to Curry for purposes of calculating his sentencing guideline range.

On October 24, 2002, a grand jury returned an eight count Indictment against Curry. On March 12, 2003, the government filed an Information and Notice of Prior Narcotics Convictions pursuant to 21 U.S.C. § 851. On September 24, 2003, Curry was convicted at trial on all eight counts, to wit:

Count 1: Conspiracy to distribute fifty (50) grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1).

Count 2: Distribution of five (5) grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1).

Count 3: Distribution of five (5) grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1).

Count 4: Distribution of five (5) grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1).

Count 5: Distribution of five (5) grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1).

---

[2] PSR at p. 6, ¶ 15 (emphasis omitted).

Count 6:   Distribution of five (5) grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1).

Count 7:   Distribution of fifty (50) grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1).

Count 8:   Distribution of five (5) grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1).

Based upon the amount of cocaine base set forth in Counts 1 and 7, coupled with the Government's Notice and the Court's certification of two prior narcotics convictions, Curry was subject to a mandatory term of life imprisonment without release. As to Counts 2 through 6 and Count 8, and in light of Curry's two prior narcotics convictions, his statutory mandatory term of imprisonment was ten years to life. The Presentence Report determined Curry to be a career offender and calculated his then-mandatory sentencing guideline range as 360 months to life. However, as to Counts 1 and 7, because the statutorily required minimum sentence was life, the guideline range became life incarceration. USSG § 5G1.1 (2000). On April 13, 2004, Curry was sentenced to life in prison on Counts 1 and 7, and life in prison on the remaining counts, with the terms to run concurrently. [Doc. No. 142]. As of this date, Curry has served approximately 206 months in prison. [PSR at 2].

## II.
### APPLICABLE LAW

At the time Curry was sentenced, distribution of 50 grams or more of cocaine base carried a mandatory minimum sentence of ten years and a maximum sentence of life imprisonment; however, if the offender had two prior felony drug convictions, his mandatory minimum sentence increased to life in prison. 21 U.S.C. § 841(b)(1)(A) (West 2003). If an offense involved more than 5 grams of cocaine base, the offender was subject to a mandatory minimum term of five years imprisonment and a maximum term of forty years; however, if the offender had a prior felony drug

conviction, his mandatory minimum sentence increased to ten years, with a maximum sentence of life imprisonment. *Id.* at § 841(b)(1)(B).

In 2010, after more than two decades of substantial criticism from the Sentencing Commission and others in the law enforcement community that the harsh treatment of crack cocaine offenses was fundamentally unfair when compared to offenses involving powder cocaine, Congress passed the Fair Sentencing Act. *Dorsey v. United States*, 567 U.S. 260, 268 (2012). Section 2 of the Fair Sentencing Act increased the drug quantities triggering the mandatory minimum for crack offenses "from 5 grams to 28 grams in respect to the 5-year minimum and from 50 grams to 280 grams in respect to the 10-year minimum." *Id.* at 269. While the Act did not entirely eliminate the disparity between powder and crack cocaine, it did lower the 100–to–1 crack-to-powder ratio to 18–to–1.[3] *Id.* The Fair Sentencing Act took effect on August 3, 2010 but applied only to sentences imposed thereafter. *Id.* at 264.

In 2018, Congress passed the First Step Act, which made the revised crack cocaine minimums established by the Fair Sentencing Act retroactive. The First Step Act provides in relevant part:

> (a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010.
>
> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed.
>
> (c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced

---

[3] The Fair Sentencing Act also eliminated the 5–year mandatory minimum for simple possession of crack. *Dorsey* at 269.

in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 . . . or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194. In this matter, the government contends Curry did not commit a "covered offense" and therefore is ineligible for relief under the First Step Act. [Doc. No. 258].

### III.
#### DISCUSSION

The government contends Curry is not eligible for relief under the First Step Act. According to the government, the definition of "covered offense" set forth in the First Step Act "keys eligibility not on the defendant's statute of conviction, but on the specific 'violation' that the defendant 'committed.'" [Doc. No. 214 at 6]. In other words, the government contends it is the offense conduct that determines eligibility under the First Step Act, not the statute underlying a defendant's conviction and penalty. In this matter, because the Presentence Report found that Curry's offense conduct involved 1.812 kilograms of cocaine base – an amount far in excess of the 280-gram threshold – it is the government's position that Curry's violation does not constitute a "covered offense."[4] The Court disagrees.

Again, Section 404(a) of the First Step Act defines "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010." The government first argues that when Congress uses the word "violation," it is referring to specific offense conduct and not the statute of conviction. *Id.* at 6. The Court finds nothing in the text of the statute or cases

---

[4] The offense conduct is determined by a court (not a jury) utilizing the "preponderance of evidence" standard. *United States v. Ollison*, 555 F.3d 152, 164 (5th Cir. 2009).

cited by the government persuading it that the government's position is correct.[5] The government next asserts, "[b]y referring to a 'violation' that was 'committed' on a particular date, Section 404(a) sensibly grounds the eligibility inquiry in the actual conduct involved in the defendant's violation, rather than the statute under which the defendant was convicted." *Id.* But as one court has noted, the word "'committed' is easily read to refer solely to the timing of the conduct underlying the conviction." *United States v. Martin*, 2019 WL 2571148, \*3 (E.D.N.Y. June 20, 2019). The government additionally argues that the term "statutory" (*i.e.*, "a violation of a Federal criminal statute, the *statutory* penalties for which were modified") would be redundant if "statutory" modified "statute" rather than "violation." [Doc. No. 214 at 8]. Again, the Court disagrees. The more natural reading is that "[t]he use of the term 'statutory' simply indicates that the penalties modified must be the penalties prescribed by statute, as opposed to a change in the Sentencing Guidelines, for example." *Martin* at \*3; *see also United States v. Rose*, 379 F.Supp.3d 223, 228-29 (S.D.N.Y. 2019) (engaging in extended textual analysis and determining "statutory" modifies the adjacent noun phrase "Federal criminal statute").

In sum, the Court finds nothing in the text of statute, the legislative history or jurisprudence indicating Congress intended to limit the Court's authority to "impose a reduced sentence" under the First Step Act beyond the limits expressly set forth therein. This interpretation comports with

---

[5] In support of its argument that "violation" refers to offense conduct rather than the statute of conviction, the government cites *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 489 (1985), *United States v. Hayes*, 555 U.S. 415 (2009), and *Nijhawan v. Holder*, 557 U.S. 29, 32 (2009). [Doc. No. 214 at 6-7]. However, the Court finds the following cases undercut the government's position: *United States v. Davis*, 139 S.Ct. 2319, 2327, 2328-29 (2019) (to determine the meaning of the word "offense," courts must examine the statute's text, context, and history, because "offense" can refer to a generic crime, or it can refer to the specific conduct of an offender); *Torres v. Lynch*, 136 S. Ct. 1619, 1624 (2016) ("The substantive elements 'primarily define[] the behavior that the statute calls a 'violation' of federal law."); *Carr v. United States*, 560 U.S. 438, 446 (2010) ("For a defendant to violate this provision, . . . the statute's three elements must be satisfied in sequence, culminating in a post-SORNA failure to register.") (internal punctuation omitted); *see also United States v. Williams*, 402 F.Supp.3d 442, 446-48 (N.D.Ill. 2019) (addressing the three cases cited here by the government in connection with the First Step Act).

the vast majority of courts that have addressed this issue, which have likewise found the language of the First Step Act indicates Congress' intent to tie eligibility to a defendant's statute of conviction rather than his or her offense conduct. *See e.g.*, *United States v. Wirsing*, 943 F.3d 175, 185-86 (4th Cir. 2019); *United States v. McDonald*, -- F.3d --, 2019 WL 6721187, *2 (8th Cir. Dec. 11, 2019); *United States v. Beamus*, -- F.3d --, 2019 WL 6207955, *3 (6th Cir. Nov. 21, 2019); *United States v. Hegwood*, 934 F.3d 414, 417 (5th Cir. 2019) (assuming without deciding that the statute-of-conviction controls); *United States v. Davis*, 2019 WL 1054554, *2 (W.D.N.Y. 2019); *Rose*, 379 F.Supp.3d at 230 (collecting cases); *United States v. Allen*, 384 F.Supp.3d 238, 241 & n.4 (D. Conn. 2019) (collecting cases); *U.S. v. Lutcher*, 2019 WL 3006414, *3 (E.D.La. July 10, 2019). Had Congress intended to tie a defendant's eligibility for relief under the First Step Act to the quantity of cocaine base attributed to him at sentencing, it could have done so in a much more straightforward manner than by defining "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by . . . the Fair Sentencing Act of 2010." For all of the reasons set forth above, the Court finds the statute of conviction – not the offense conduct – controls whether or not a defendant is eligible for relief under the First Step Act.

Because the Court finds Curry was convicted of a "covered offense" before August 3, 2010, and because none of the exceptions set forth in section 404(c) of the First Step Act are applicable, the Court finds Curry is eligible for relief under the First Step Act.

**IV.**
**RELIEF GRANTED**

In determining the appropriate sentence, the Court has considered the reduced statutory range, the sentencing factors set forth in 18 U.S.C. § 3553(a), and pre and post-sentencing conduct. *See e.g. Hegwood*, 934 F.3d at 418; *United States v. Williams*, -- F.3d --, 2019 WL 6316657, *2 (Nov. 26, 2019) (citing *Pepper v. U.S.*, 562 U.S. 476, 504 (2011)); *United States v. Mitchell*, 2019

WL 2647571, *7 (D.D.C. June 27, 2019); *United States v. Abdullah*, -- F.Supp.3d --, 2019 WL 5076379, *3 (D.R.I. Oct. 10, 2019); *United States v. Hadley*, 389 F.Supp.3d 1043, 1048 (M.D. Fla. 2019). Applying the Fair Sentencing Act retroactively to Mr. Curry through Section 404(b) of the First Step Act, less than 280 grams of cocaine base (i.e., the amounts set forth in the Indictment) subjects Curry to a mandatory minimum sentence of five to forty years, with a mandatory four-year term of supervised release under 21 U.S.C. § 841(b)(1)(B). With the section 851 enhancement, the mandatory minimum is increased to ten-years of incarceration, and supervised release is increased to eight years. As for the Sentencing Guidelines, because of Mr. Curry's career offender designation, his revised guideline range is 360 months to life.

While Curry's Presentence Report reflects a lengthy criminal history, the Court notes his last offense prior to his conviction in this matter occurred in 1990. His only conviction for a crime involving violence occurred in 1970, almost fifty years ago, when Curry was twenty-four years of age. He is now seventy-four years old and has served over seventeen years in prison. During his seventeen years in BOP custody, Curry has had two discipline reports for refusing to obey an order, a remarkable feat in this Court's opinion.[6] His health is categorized by BOP as stable but requiring chronic care. Curry has obtained his high school diploma and has thrived while working for the Recreational Specialist in BOP. Curry plans to reside with his daughter if released from prison. The Court further notes that while Curry has served over seventeen years in prison, his two narcotics suppliers[7] – Derek Parker and Vincent Tate – were originally sentenced to 210 months

---

[6] The undersigned has ruled on over twenty First Step Act motions and very few defendants have had as few disciplinary violations as Curry.

[7] According to Curry's PSR, his suppliers obtained their narcotics from a "Columbian source of supply from Houston, Texas." PSR at ¶ 12.

and 240 months of incarceration, respectively.[8] Parker's sentence was later reduced to 168 months, and then to time served, ultimately resulting in a term of incarceration of approximately ten years.[9] Tate's 240 month sentence was later reduced to 160 months.[10]

The Court finds a non-guideline sentence is warranted in this matter.[11] Curry has served over seventeen years in prison. The Court finds he has already served a substantial prison term, commensurate with the crime he committed. After a review of the underlying record, the Court finds a sentence of time served, effective March 10, 2020, is sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. Accordingly,

IT IS HEREBY ORDERED that the Motion to Reduce Sentence [Doc. No. 213] is GRANTED, and the Court will issue an amended judgment reducing Curry's term of incarceration to TIME SERVED, effective March 10, 2020, and reducing his term of supervised release on Counts 1 and 7 to EIGHT (8) years, and reducing his term of supervised release on Counts 2-6 and 8 to SIX (6) years.

---

[8] *See United States v. Parker*, No. 5:01-CR-50044 (W.D.La.); *United States v. Tate*, No. 5:01-CR-50102 (W.D.La.).

[9] Case No. 5:01-CR-50044, ECF Nos. 48, 64.

[10] Case No. 5:01-CR-50102, ECF No. 21.

[11] According to a report by the United States Sentencing Commission, "courts often sentence [] offenders to the statutory mandatory minimum term of imprisonment regardless of the applicable guideline range." U.S. Sentencing Comm'n, *An Overview of Mandatory Minimum Penalties in the Federal Criminal Justice System*, (July 2017), at p. 47, available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170711_Mand-Min.pdf (last visited July 11, 2019). In Fiscal Year 2017, 50% of defendants sentenced in this District for drug trafficking offenses received a guideline sentence, and 50% received a below guideline sentence. *See* U.S. Sentencing Comm'n, *Statistical Information Packet Fiscal Year 2017, Western District of Louisiana* (2017), at 18-19: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2017/law17.pdf (last visited July 11, 2019).

IT IS FURTHER ORDERED that the Clerk of Court TERMINATE the Motion for Appointment of Counsel [Doc. No. 210] as MOOT.[12]

SIGNED this 13th day of December, 2019.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[12] The Federal Public Defender was appointed to represent Defendant on January 28, 2019. [*See* Doc. No. 211].